# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBERT WAUGH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 12-12282-TSH** |
| BJ'S WHOLESALE CLUB, INC. | ) | |
| Defendant. | ) | |

## ORDER

### February 3, 2014

Hennessy, M.J.

By Order of Reference dated September 18, 2013, pursuant to 28 U.S.C. § 636(b)(1)(A) (Docket #29), this matter was referred to me for a ruling on Plaintiff Robert Waugh's Motion to Compel Discovery (Docket #26). Defendant BJ's Wholesale Club, Inc. ("BJ's") has filed a response (Docket #28) to which Waugh has replied (Docket #33). This matter is now ripe for adjudication. For the reasons that follow, the Motion to Compel Discovery is ALLOWED IN PART AND DENIED IN PART as set forth in this Order.

## I.     BACKGROUND

Waugh filed his Complaint against BJ's on December 7, 2012, asserting claims for willful violation of the Family and Medical Leave Act ("FMLA"), disability discrimination, and breach of contract. (Docket #1). In his Complaint, Waugh states that he began his employment at BJ's home office on July 13, 1998. (Docket #1 at ¶ 13). Waugh was promoted several times culminating in a position as Manager of the Mailroom. (Docket #1 at ¶¶ 17-23).

BJ's represents that it employs approximately 23, 000 employees and operates 200 clubs in 15 states in addition to 3 distribution centers.  (Docket #28 at 2).  About 1,000 employees work at BJ's home office.  (Docket #28 at 2).

In the second half of December 2009, a package that a subcontractor working at BJ's had sent to himself went missing.  (Docket #1 at ¶ 36).  Waugh states that, upon learning of the missing package, he unsuccessfully attempted to contact his manager Susan Wadowski, Assistant Vice President, Manager of Club / Home Office Operations, by leaving her several voicemails.  (Docket #1 at ¶ 37).  On December 17, 2009, after Wadowski failed to return his calls, Waugh walked up to her office, but she was not available.  (Docket #1 at ¶ 37).  Waugh and his staff began an investigation in hopes of locating the missing package.  (Docket #1 at ¶ 38).  On December 21, 2009, Waugh met with Wadowski and asked for her assistance in locating the missing package.  (Docket #1 at ¶ 43).  Wadowski told Waugh that she would get back to him about the investigation, but she failed to do so.  (Docket #1 at ¶ 43).

On December 22, 2009, BJ's referred the investigation of the missing package to its Asset Protection Department.  (Docket #1 at ¶ 44).  Jeff Desroches, Vice President of the Department, and Charles Delgado, Assistant Vice President of the Department, interrogated various members of Waugh's staff about the missing package.  (Docket #1 at ¶ 44).  Waugh was not at work that day due to an illness.  (Docket #1 at ¶ 44).

On December 23, 2009, after returning to work from his one-day absence, Waugh was summoned to Desroches' office.  (Docket #1 at ¶ 46).  Waugh asserts that Desroches and Delgado interrogated him in a manner which was harsh, attacking him personally and professionally for over an hour, accusing him of wrongdoing, and cursing at and berating him.

(Docket #46 at ¶ 46).  Waugh was summoned to meet with Desroches and Delgado four times that day.  (Docket #1 at ¶¶ 46-52).

Waugh was then summoned to the office of Mark Vilensky, the Vice President of Club Operations.  (Docket #1 at ¶ 54).  Wadowski and Desroches were also present.  (Docket #1 at ¶ 54).  Waugh states that Vilensky called him a "terrible" and "lousy" manager, shouted into his face, invaded his personal space, and warned Waugh of "some serious consequences coming your way."  (Docket #1 at ¶ 54).  Waugh left Vilensky's office in tears.  (Docket #1 at ¶ 55).  He then went to Human Resources and reported what had just transpired to Manager of Home Office Human Resources Michael Lubarsky.  (Docket #1 at ¶ 58).  Lubarsky assured Waugh that he would look into the issues Waugh had raised and advised him to go home.  (Docket #1 at ¶ 58).

Waugh asserts that he relied on BJ's stated "open door policy" in reporting the events to Lubarsky.  (Docket #1 at ¶ 56).  BJ's Written Home Team Member Guide states:

**Open Door**

At BJ's, management's door is always open.  BJ's encourages you to bring forth work-related issues so that they may be quickly resolved.  You are encouraged to address any work-related issues[.]

(Docket #1-5 at 16).

Waugh reported to work on December 24, 2009, although BJ's was closed, to ensure that payroll checks were delivered to employees by FedEx.  (Docket #1 at ¶ 59).  After leaving work that day, Waugh suffered severe anxiety and depression.  (Docket #1 at ¶ 60).  He was unable to sleep, could not eat, could not focus or concentrate, could not work, and could not stop crying.  (Docket #1 at ¶ 60).  On December 26, 2009, Waugh went to the Emergency Room at Southboro Medical Center where he was given medication to alleviate his anxiety.  (Docket #1 at ¶ 62).

Waugh also consulted with his primary care physician who determined that he needed a two-week leave of absence from work in order to stabilize his anxiety level.  (Docket #1 at ¶ 63).  His physician also prescribed additional medication and referred Waugh to a mental health provider.  (Docket #1 at ¶ 63).

Wadowski testified at her deposition that she decided on December 28, 2009 to terminate Waugh.  (Docket #28-1 at 3-4).

On December 31, 2009, Waugh completed a Leave of Absence Request Form seeking leave under the FMLA from December 28, 2009 to January 11, 2010.  (Docket #1-6 at 1).  On January 7, 2010, BJ's approved Waugh's request for FMLA leave.  (Docket 1-7 at 1).

Waugh used regular and customary channels to schedule a meeting with CEO Laura Sen, taking advantage of her "open door policy."  (Docket #1 at ¶¶ 65-66).  The meeting took place on January 7, 2010.  (Docket #1 at ¶ 66).  Waugh recounted to Sen the unfair treatment he had suffered, that he had experienced a nervous breakdown as a result, and was now on FMLA leave.  (Docket #1 at ¶ 66).  Sen told Waugh that she would "look into it."  (Docket #1 at ¶ 66).  Waugh received communication from BJ's later that day approving his request for FMLA leave.  (Docket #1 at ¶ 67).

After his meeting with Sen, BJ's Associate General Counsel McCray Pettway contacted Waugh and asked him to come to BJ's to speak with her and Lubarsky.  (Docket #1 at ¶ 69).  Waugh described his experiences and informed Pettway and Lubarsky that he would be returning to work on January 11, 2010.  (Docket #1 at ¶¶ 71-72).

Waugh returned to work on January 11, 2010.  (Docket #1 at ¶ 73).  At 3 p.m. that same day, he was fired.  (Docket #1 at ¶ 73).

Waugh filed the instant Complaint on December 7, 2012.  (Docket #1).  In Count I, Waugh alleges that BJ's willfully violated the FMLA by terminating his employment in retaliation for taking a medical leave of absence pursuant to the FMLA.  (Docket #1 at ¶¶ 80-92).  In Count II of the Complaint, Waugh alleges that BJ's terminated him because he suffered from a psychological disability in violation of the Americans with Disabilities Act ("ADA") and Massachusetts General Laws chapter 151B.  (Docket #1 at ¶¶ 93-101).  Waugh asserts a claim for retaliation in Count III, alleging that he was fired because he reported that he was disabled.  (Docket #1 at ¶¶ 102-07).  In Count IV of the Complaint, Waugh asserts a claim for breach of contract, alleging that BJ's breached its contractual promise that it would not retaliate against employees for using BJ's Open Door policy.  (Docket #1 at ¶¶ 108-15).

On May 16, 2013, Waugh served a set of interrogatories and a set of document requests ("First Document Request") on BJ's.  (Docket #28 at 3).  On June 10, 2013, BJ's responded to Waugh's interrogatories (Docket #27-4) and the First Document Request (Docket #27-2).  Waugh served an additional set of document requests on May 31, 2013 ("Second Document Request").  BJ's responded to the Second Document Request on July 1, 2013.  (Docket #27-3).

On June 19, 2013, the Court entered a confidentiality agreement agreed to by the parties that prohibits either party from using any document designated "confidential" for any purpose other than this litigation.  (Docket #22).

BJ's represents that, at the time the motion was filed, BJ's has produced 2,297 pages of documents and Waugh has deposed Rule 30(B)(6) representative and Manager of Team Member Relations Derek Lachman, Delgado, Wadowski, Lubarsky, McCray Pettway, and Sen.  (Docket #28 at 4).

5

II.     STANDARD

Federal Rule of Civil Procedure 26(b) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense."  Rule 26(b) also allows a court "[f]or good cause," to "order discovery of any matter relevant to the subject matter involved in the action." "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

If a party objects as to the relevance of discovery, the court will "become involved to determine whether the discovery is relevant to the claims or defenses[.]"  In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment).   "Moreover, the party seeking discovery information 'over an adversary's objection has the burden of showing the information's relevance."   Cutter v. HealthMarkets, Inc., No. 10-11488-JLT, 2001 U.S. Dist. LEXIS 13593, at *6 (D. Mass. Feb. 10, 2011) (quoting Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005)).

> [T]he Court must limit the frequency or extent of discovery otherwise allowed … if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

III.     ANALYSIS

A.     Employee Usage of the Open Door Policy

In Count IV of his Complaint, Waugh asserts a claim for breach of contract, alleging that BJ's breached its contractual promise that it would not retaliate against employees for using BJ's Open Door policy.   (Docket #1 at ¶¶ 108-15).   Waugh seeks to compel BJ's to provide documents responsive to his first document requests numbers 5 through 9, which deal with BJ's Open Door policy.   BJ's asserts that these requests should be denied because Waugh fails to establish the relevance of the extremely broad range of information that he seeks.  (Docket #28 at 9-10).  BJ's states that any complaint or issue raised with human resources or any manager or supervisor was arguably raised pursuant to the Open Door policy.  (Docket #28 at 10; Docket #28-5 at 2-3).  BJ's also asserts that the Open Door complaints were not necessarily recorded as employees were not required to raise issues via the Open Door policy in writing.  (Docket #28 at 10; Docket #28-4 at 5-6).

BJ's asserts that Waugh's breach of contract claim is essentially a retaliation claim, and, therefore, Wadowksi's state of mind is essential to the analysis of the breach of contract claim as she made the determination to terminate Waugh.  BJ's argues that Waugh's requests should be limited to cases where Wadowski was involved.  (Docket #28 at 10-11).  However, the Court does not find this argument compelling as the limited portion of Wadowski's deposition that has been submitted as an exhibit indicates that the decision to terminate Waugh did not solely rest in her hands.  (Docket #28-1 at 3-4).

BJ's also argues that, with respect to Sen, BJ's could not produce what does not exist as Sen testified at her deposition that she does not keep records of Open Door meetings.  (Docket #28 at 12).  The deposition excerpt that BJ's provided to substantiate this claim clearly does not

7

support this assertion.  (See Docket #28-5).  Sen never says that she did not keep records of Open

Door meetings; in fact, when asked how she would research the number of Open Door meetings

she had participated in, she said she would have to research it and one tool that she would use is

to look at e-mails.  (Docket #28-5 at 2).  It may be that Sen did not keep records of Open Door

meetings; however, this is not clear from the evidence provided.

Recognizing the competing interests at stake in this case, the Court allows the motion to

compel to the following extent.  BJ's shall provide to Waugh a list indicating any employee in its

corporate headquarters who utilized the Open Door policy from January 1, 2008 to the present

and left their employment with BJ's within two years of the use of the Open Door policy.  For

each of these former employees, BJ's shall state the date on which the employee used the Open

Door policy, the nature of the employee's complaint or report, any action taken by BJ's as a

result of the complaint or report, the stated reason for the employee's separation from BJ's, the

date of separation, and whether the employee communicated or met with Sen in utilizing the

Open Door policy.

B.      Employee Requests for FMLA Based on Mental Health Issues

Waugh asserts claims in Counts I, II, and III of his Complaint relating to his request for

leave as a result of his psychological disability and his subsequent termination.  Waugh seeks to

compel BJ's to provide documents responsive to his second document requests numbers 6

through 10, which deal with requests for FMLA or other medical leave by employees that are

based in part or in whole on emotional, psychological, or psychiatric problems.  (Docket #27 at

7-8).  Waugh asserts that Lubarsky has expressed animus towards employees who request FMLA

for emotional or other mental health impairments.  (Docket #27 at 8).  BJ's asserts that Waugh's

request is overbroad as it is not limited to situations where Lubarsky or other supervisory personnel who played a role in Waugh's leave or termination were involved.  (Docket #28 at 13).

BJ's has already produced the medical leave files of employees who took medical leave for mental health reasons within the previous two years and who report or reported, directly or indirectly, either to Wadowsky, Vilensky, Lubarsky, or former Chief People Officer, Susan Hoffman.  (Docket #28 at 15).  BJ's then produced the personnel records of any of those employees who are no longer employed by BJ's.  (Docket #28 at 15).

The Court understands the privacy issues at stake here, but believes that BJ's production is too narrow in light of the protective order in place.  The Court will allow the motion to compel to the following extent.  In addition to the files already produced, BJ's shall produce the medical leave files of employees at headquarters who took medical leave for mental health reasons from January 1, 2008 through present.  If any of these employees are no longer employed by BJ's, BJ's shall produce that employee's personnel records.  In both instances, the names and personal identifiers of these employees shall be redacted.[1]

C.     Other Acts of Discrimination, Retaliation, and/or Breach of Contract

In request number 16 of Waugh's first document requests and interrogatory number 13 of his first set of interrogatories, Waugh asks BJ's to identify all employee complaints of age and/or disability discrimination from January 1, 2008 to the present.  (Docket #27-2 at 9; Docket #27-4 at 10).  These requests are not limited to employees at headquarters.  (Id.).  BJ's responded by producing information concerning complaints by employees in headquarters of discrimination on the basis of alleged disability since January 1, 2008.  (Docket #27-2 at 8-10; Docket #27-4 at 9-11).  The Court finds this response is too limited.  In addition to the information already

---

[1] If Waugh determines that he requires the names of these employees or any other redacted information, he may file an additional motion to compel at that time.

produced, BJ's shall answer this request and interrogatory with respect to employee complaints of disability discrimination from January 1, 2008 to present where the complaint concerns any person identified as having input into the decision to terminate Waugh.

In request number 18 of Waugh's first document requests and interrogatory number 15 of Waugh's first set of interrogatories, Waugh asks BJ's to identify all employee complaints of retaliation from January 1, 2008 to the present.  (Docket #27-2 at 11; Docket #27-4 at 11-12). These requests are not limited to employees at headquarters.  (Id.).  BJ's responded by stating that, other than Waugh's complaint and the complaint in the <u>Kerivan</u> matter, it is unaware of any complaints by employees at headquarters of retaliation since January 1, 2008.  (Docket #27-2 at 10-11; Docket #27-4 at 11-12).  The Court finds this response is too limited.  In addition to the information already produced, BJ's shall answer this request and interrogatory with respect to employee complaints of retaliation from January 1, 2008 to present where the complaint concerns any person identified as having input into the decision to terminate Waugh.

In request number 20 of Waugh's first document requests and interrogatory number 17 of Waugh's first set of interrogatories, Waugh asks BJ's to identify all employee complaints of violation of the FMLA from January 1, 2008 to present.  (Docket #27-2 at 12; Docket #27-4 at 13).  BJ's responded that it was unaware of any complaints of violation of the FMLA during the time frame, other than Waugh's, by employees at headquarters.  (Docket #27-4 at 12-13).  The Court finds this response is too limited.  In addition to the information already produced, BJ's shall answer this request and interrogatory with respect to employee complaints of FMLA violation from January 1, 2008 to present where the complaint concerns any person identified as having input into the decision to terminate Waugh.

In request number 22 of Waugh's first document requests and interrogatory number 19 of Waugh's first set of interrogatories, Waugh asks BJ's to identify all employee complaints of breach of contract and/or reliance with respect to BJ's Open Door policy, Home Office Team Member Guide, Home Office Policy Manual, and/or other employment policies or practices, whether verbal or written, from January 1, 2008 to present.  (Docket #27-2 at 14; Docket #27-4 at 14-15).  BJ's responded that it was unaware of any complaints responsive to this request and interrogatory by employees at headquarters.  (Docket #27-4 at 14-15).  The Court finds that this response is sufficient.

IV.     CONCLUSION

For the foregoing reasons, the Motion to Compel Discovery (Docket #26) is ALLOWED IN PART and DENIED IN PART as set forth in this Order.


/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

11